Kennon, J.
These proceedings were instituted by the state for ■the purpose of ousting the defendant from the office of treasurer of Hocking county.
The defendant, in showing by what authority he held the office and exercised the duties of county treasurer, plead: 1. That at the October election of 1854, he was duly elected treasurer of Hocking county; that on the first Monday of June, 1855; he executed a bond, with more than four freehold sureties, to the acceptance of the commissioners of the county, in a sum prescribed by the commissioners; that he then and there took the oath prescribed by law, subscribed the same, and caused it to be indorsed on the bond according to law, and, therefore, that he lawfully exercises the duties of the office of county treasurer. 2. That on -the first Monday of June, 1855, he executed and delivered to the commissioners for their acceptance, a bond conditioned according to law, in the penal sum of $80,000, with twenty-four freehold sureties; that the commissioners, on said first day of June, 1855, neither accepted nor rejected the bond, but continued their session until the next day, being the next day after the said first Monday of June, 1855, and then and there accepted and ^approved of said bond; that the said Tool then and there, on the same day, took and subscribed the oath required by the state, and caused the same to be indorsed on the bond thus accepted by the commissioners. On the first plea the state took issue, and to the second filed a demurrer.
The question presented for our consideration is, whether this second plea is sufficient. This depends upon the construction to be put on the statute.
Section 2, of the act prescribing the duties of county treasure^ is in these words : “ That each county treasurer, previous to entering on the duties of his office, shall give bond, with four or more freehold securities, to the acceptance of the county commissioners, and in such sum as said commissioners shall direct, payable to the State of Ohio, and conditioned for the paying over,-according to law, all moneys which shall come into his hands for state, county, township, or other purposes; and shall also take and subscribe an. oath or affirmation, to be indorsed on said bond, that he will faithfully discharge all the duties of his office; and the said bond, so indorsed, shall be deposited with the auditor of the county, and be by him carefully preserved.”
*559 Section 3 provides, that if any person elected to the office of county treasurer, shall not give bond and take the oath or affirmation, as required in the preceding section, on or before the first Monday in June next following his election, his office shall be considered vacant.
By section 60 of the same chapter (Swan’s Stat. 1017), it is made-the duty of the county commissioners, in case the office of county treasurer shall become vacant by death, removal, resignation, neglect to give bond, or from any other cause, to fill the vacancy forthwith by some suitable person.
This bond was not accepted by the commissioners on the first Monday of June next after the election, nor was the oath, required by the statute, taken and subscribed, nor was it indorsed on the-bond, on or before the first Monday of June.
*The bond was executed and delivered to the commissioners, for their acceptance, within the time prescribed by law, but was neither accepted nor rejected on that day; but on the next day, and during the regular June session of the commissioners, was accepted and approved by them. Now, if a good and sufficient bond, executed according to law, with the oath of the treasurer executed thereon as prescribed by the statute, had been presented to the-commissioners at the March term, 1855, and they had not acted on the bond until the day after the first Monday of June, 1855, and then approved the same, it could scarcely be contended that the-treasurer would be deprived of his office. The treasurer, in such case, would have done all that the law required of him to do; and it would, to say the least of it, be strange if, by the neglect of the commissioners, he was not only deprived of his office, but the commissioners themselves thereby acquire the power of appointing another in his place.
In such case, the doctrine of relation would apply, and the acceptance, by the commissioners, of the bond on the next day, would relate back to the time of the delivery of the bond to the commissioners for their acceptance.
It is said, in 18 Viner’s Abridgment, 290, that where there are-divers acts concurrent to make a conveyance estate, or other thing, the original act shall be preferred, and to this the other acts shall-have relation.
The instances in which the doctrine of relation applies are very numerous.
*560 The deed of a sheriff relates back to the day of sale, and has the same effect as if executed on the day of sale, provided the interests •of thirdpersons are not injuriously affected thereby. Vide Jackson v. McCall, 3 Cow. 75, and the authorities cited in the opinion of the court.
So, where a deed is delivered as an escrow to a third person, to be ■delivered upon a condition to be performed, and the condition is afterward performed and the deed delivered, this last *delivery shall, by relation, operate back and take effect from the first delivery, although the grantor die in the meantime, between the •first and second delivery. Vide Viner, title Relation, p. 290.
In the ease supposed, the presentation of the bond on the first Monday in June, with the oath indorsed thereon, and the acceptance by the commissioners, are, in the sense in which the word concurrent is used by Yiner, concurrent acts, and the acceptances shall relate back to the first Monday of June, afid the whole be considered as having been done on that day; although, in point of fact, the acceptance was made and entered by the commissioners on the day after the first Monday of June.
But, in this cause, the oath was not made or subscribed by the treasurer, nor indorsed on the bond, until the next day after the time prescribed by law; and therefore, it is claimed, the office became vacant, and the present incumbent should be removed. But we think, by a fair reading of the statute, the oath and indorsement follow the acceptance, and do not necessarily precede it. The subscribed oath is to be indorsed on the bond, the accepted bond, and, in the natural chronological order of things, the execution and the acceptance of the bond, the oath and the indorsement, follow each oth er; indeed, the very word bond, means that it has been delivered to, and accepted by, the commissioners. And although, if the oath had been indorsed on the bond at the time it was presented to the commissioners, the law would have been complied with; still, we think the indorsement of the oath more properly follows the .acceptance, and if made immediately after the acceptance, that the oath, indorsement, and the acceptance will have relation to the time of the first act of the treasurer, viz., the delivery of the bond to the commissioners for their acceptance, and that this original act shall, in the language of Yiner, be preferred; and to this first act the others shall have relation, and, by this fiction, the whole shall bo .considered as done on or before the first Monday of June.

Proceedinqs dismissed.